AMELIA J. MARSH *vs.* CONCORD CO-OPERATIVE BANK.

Middlesex.    November 9, 1936. — January 31, 1938.

Present: RUGG, C.J., FIELD, DONAHUE, & QUA, JJ.

*Coöperative Bank. Corporation,* Ultra vires. *Contract,* Validity, What constitutes.

A Massachusetts coöperative bank has no power to make a contract with one who is not a shareholder that it will make him a loan to be secured by a mortgage upon his real estate; and no action can be maintained for damages resulting from cancellation by the bank of such a contract.

Approval by a coöperative bank of an application by a nonshareholder for a loan and incomplete negotiations for the issuance of shares to him did not give the borrower the standing of a shareholder.

CONTRACT. Writ in the Superior Court dated June 24, 1931.

After the recording, with leave reserved, of a verdict for the plaintiff in the sum of $878.50, *Goldberg,* J., ordered a verdict for the defendant to be entered. The plaintiff alleged exceptions.

*C. C. Steadman,* (*M. Ciullo* with him,) for the plaintiff.

*F. H. Harding,* for the defendant.

FIELD, J.    This is an action of contract in which the plaintiff seeks to recover damages for alleged breach of an agreement to lend the plaintiff $4,000, to be secured by shares of the defendant coöperative bank and by land of the plaintiff upon which a house was to be built. There was a verdict for the plaintiff; but a motion that, in ac-

cordance with leave reserved, a verdict be entered for the defendant, was allowed, and the plaintiff excepted.

The motion was allowed rightly.

There was evidence that the plaintiff applied to the defendant — a coöperative bank — for a loan, as above described, that the defendant's directors voted to grant the loan and the plaintiff was notified of such action, that the plaintiff began to build a house, and that, thereafter, the defendant purported to "cancel" the loan on the ground that the foundation of the house was not satisfactory to the defendant's security committee.

The failure of the plaintiff to show that she was a member — shareholder — of the defendant at any time prior to the "cancellation" of the loan is fatal to recovery by her, and other possible defences need not be considered. A coöperative bank is organized "for the purpose of accumulating the savings of its members and loaning such accumulations to them" (G. L. [Ter. Ed.] c. 170 [as appearing in St. 1933, c. 144], § 2, see also §§ 23, 24, 26, 27, 28, 29), though there are statutory provisions — not material on the evidence in this case — for the investment of its surplus funds in other ways than by lending them to members; § 25, as amended by St. 1935, c. 174. See *Lowell Co-operative Bank* v. *Dafis*, 276 Mass. 3, 6; *Lowell Co-operative Bank* v. *Sheridan*, 284 Mass. 594, 599–600; *Lowell Co-operative Bank* v. *Co-operative Central Bank*, 287 Mass. 338, 344–345, 346. The proposed loan to the plaintiff or an agreement to make such a loan, unless the plaintiff was a member — that is, shareholder — of the defendant, was beyond the power of the defendant. See G. L. (Ter. Ed.) c. 170 (as appearing as St. 1933, c. 144), § 27. This limitation upon the power of the defendant is mandatory and the plaintiff was bound to take notice of it. An agreement of the defendant with the plaintiff to make a loan to her inconsistent with this limitation upon the defendant's powers cannot be made the foundation of an action for damages. See *Jones* v. *B. F. Butler Coöperative Bank*, 254 Mass. 82, 85. See also *Gilson* v. *Cambridge Savings Bank*, 180 Mass. 444, 446; *Olson* v. *Sissenwine*, 259 Mass. 79, 82.

The evidence did not warrant a finding that the plaintiff was ever a shareholder of the defendant coöperative bank. It is undisputed that at the time the defendant's directors voted to grant the loan she was not such a shareholder. And her application for a loan, which was in evidence, and the vote to grant such loan, though based on the assumption that she was or would become a shareholder of the defendant, did not make her such a shareholder nor amount to an agreement, express or implied, that shares would be issued to her.

Nor did the evidence of what took place after the application was granted warrant a finding that the plaintiff thereby became a shareholder of the defendant — whatever would be the effect of that fact if found. This evidence, consisting principally of testimony of the plaintiff and letters from the defendant, tended to show these facts: The "defendant notified the plaintiff by letter of December 18, 1930, that the loan had been granted . . . on December 20, 1930, the defendant wrote to the plaintiff to inquire when she intended to commence building and advising her of the necessity of taking twenty shares of the bank in November series and paying November and December dues . . . on December 29 the defendant again wrote to the plaintiff stating that it would be all right to begin payments with the February series in February, 1931, upon the twenty shares which she was required to purchase in the defendant bank . . . on February 16, 1931, the defendant wrote to the plaintiff stating that the passbook showing the payment of $20 would be sent to her as soon as she sent the $20 to it . . . later . . . [the] treasurer of the defendant, advised the plaintiff that the $20 payment need not be paid then and would be deducted from the first advance payment of the loan to be made on May 15, 1931, . . . on March 23 she received a letter from the defendant's attorney . . . stating that he was ready 'to put through the loan' . . . thereafter she attempted many times to communicate with . . . [the attorney] at his office and at his house but, being unable to do so, finally telephoned to the defendant bank and was told on April 11, 1931, that

. . . [the attorney] was on vacation, that 'everything was all right' and . . . [the attorney] would take care of it as soon as he returned . . . on or about April 13, 1931, . . . [the plaintiff] .commenced the construction of the foundation of the house . . . on April 16, 1931, the defendant wrote to the plaintiff advising her that the loan had been cancelled."

It could not have been found that any shares of the defendant coöperative bank or any pass book or certificate representing such shares was ever issued to the plaintiff or that she ever made any payment for any such shares — even if it be assumed that such a payment would give her the rights of a shareholder. Compare *Auld* v. *Caunt*, 216 Mass. 381, 386. Nor could it have been found that the statement of the defendant's treasurer that "the $20 payment need not be paid then and would be deducted from the first advance payment of the loan to be made on May 15, 1931," even if authorized by the defendant, bound the defendant either to issue shares to the plaintiff at once so that she then became a shareholder, or to issue them at any later time. The proposed arrangement was not a part of the original agreement for a loan and this statement of the defendant's treasurer, considered as a promise, does not appear to have been made for a consideration. At most it was a collateral statement in regard to the manner in which the plaintiff could become qualified to obtain the proposed loan. She did not, on the evidence, become so qualified before the defendant purported to "cancel" the loan — a loan which, on the facts existing, the defendant had no right to make. No breach of any agreement binding upon the defendant is shown.

*Exceptions overruled.*