## Northern District

### No. 5434

**JOHN FERRANTI, p.p.a.**

v.

**BOSTON HOUSING AUTHORITY**

(February 6, 1961)

*Present:* Brooks, P. J. and Northrup, J.

Case tried to *Loschi, J.,* in the East Boston District Court. No. 273 of 1959.

*Brooks, J.* This is an action of tort in which plaintiff John Ferranti, seeks through his father and next friend, Joseph Ferranti, to recover for injuries sustained on September 1, 1957, on defendant's premises.

In count 1 of the declaration, plaintiff alleges defendant was negligent in failing to keep the clothes-hanging area in a reasonably safe condition, or in the same condition it was at the time of the letting of the apartment in the project to Joseph Ferranti. In count 2, plaintiff alleges negligence in permitting a

pool of water to accumulate or remain in the area. In count 3, Joseph Ferranti seeks consequential damages. In count 4, John Ferranti alleges that defendant maintained the premises in a defective condition, whereby a blocked up drain overflowed water into the clothes-hanging area where it artificially accumulated and concealed broken bottles and debris, creating a nuisance, and that by reason of the artificial accumulation of water and/or nuisance, the plaintiff was caused to slip, fall, and be injured.

Plaintiff, John Ferranti, was 2 to 2½ years old. His father, Joseph Ferranti, had been a tenant of defendant in the project for 1½ years. On September 1, 1957, Joseph Ferranti was hanging clothes in the clothes yard. He heard a scream and ran over to plaintiff who had fallen into a puddle of water and cut his leg. This puddle was about 6 feet wide, and about 10 feet long. The water was muddy. There was a jagged bottle in the puddle. The puddle had been there all through the tenancy. Water came along the asphalt from the highest point of incline on defendant's premises from a catch basin which overflowed as a result of being plugged up. The clothes yard had not been improved since Joseph Ferranti moved in and there was water there at that time. Twenty-four families used the clothes yard. Joseph Ferranti never saw anybody clean the area. In the wintertime, ice formed on the puddle and children skated there. A lot of trash and debris accumulated in the area, especially in the summertime,

which was not cleaned up. The day after the accident, defendant's maintenance man cleaned up the area.

Defendant filed the following requests for rulings:

1. The evidence does not warrant a finding that the defendant, its agents or servants, was negligent.
2. The evidence does not warrant a finding other than the negligence of the plaintiff contributed in whole or in part to cause the alleged injuries and damage.
3. The evidence does not warrant a finding that the negligence of the defendant proximately caused the alleged injuries and damage.
4. As a matter of law the defendant breached no legal duty owed by it to the plaintiff.
5. As a matter of law the defendant owed the plaintiff no duty to remove from common areas any obstruction arising from the acts of third persons and not constituting a defect in the area itself.
6. The evidence does not warrant a finding that the defendant, its agents or servants, knew or reasonable ought to have known of the presence of the glass upon which the plaintiff was injured.
7. As a matter of law, the defendant owed the plaintiff the duty only to refrain from wilful, wanton, or reckless misconduct.

The Court denied all the above Requests and made the following Findings of Fact:

"I find that the defendant was in control

of the premises where the accident occurred; that there was on the premises a puddle of water about six feet wide and ten feet long; that said puddle of water was caused by the natural flow of water upon the premises from elevations surrounding the premises; that said puddle of water contained bricks and broken glass and had a muddy and slimy bottom; that the defendant was notified on several occasions of the dangerous condition of the premises because of the presence on it of said puddle with its broken glass and bricks and slimy and muddy bottom; that the defendant had full knowledge of the dangerous condition of the premises caused by the puddle and its contents and did fail to remove the dangerous condition.

I further find that the plaintiff, a boy of 2½ years, was lawfully upon the said premises; that he was in the exercise of due care; that he was caused to slip and fall and suffer injury because of the muddy condition surrounding the puddle; and that the injury to the boy was caused by the negligence of the defendant in not clearing the premises of the puddle and the contents.

I find for the plaintiff and assess damages in the sum of $500."

Defendant claimed to be aggrieved by the denial of its requests for rulings.

Plaintiff seeks to hold defendant liable on two grounds, — Negligence and Nuisance. The grounds set forth to establish defendant's

negligence are that the premises were not kept reasonably safe during plaintiff's tenancy; also, that the premises were not maintained in the same condition they were in at the time of leasing.

It is defendant's contention that this case is similar to the usual case where injury is caused by defective premises and tenant must prove that the defect causing the injury developed subsequent to the beginning of the tenancy. Defendant argues that plaintiff has failed to prove any such *change in condition* and that, therefore, he cannot recover in this case.

The trial judge found as a fact and on sufficient evidence, that an unsafe condition was allowed to continue on the defendant's premises for at least several months. He found that part of the dangerous condition was a jagged bottle in the puddle of water which caused injury to plaintiff, who he further found was in the exercise of due care.

The judge did not specifically find that the condition which caused the injury was one which developed after the beginning of the tenancy. Indeed, there was hardly evidence upon which the judge could have so found. Therefore, if the case before us is analogous to the ordinary case where recovery is sought by a tenant because of a defective condition, then the plaintiff is probably barred from recovery on that ground. *Andrews v. Williamson,* 193 Mass. 92, 94. *Sullivan v. F. W. Woolworth Co.,* 305 Mass. 378, 379. *Furbo v. Rodney,* 331 Mass. 16, 18. *Banaghan v. Dewey,* 1959 A.S. 1497, 1500.

The case before us differs sufficiently in its facts to warrant our considering whether there might be a different conclusion of law as to liability. A statute is involved, G. L. c. 121, s. 26 FF: "It is hereby ordered to be the policy of this Commonwealth, that each housing authority shall manage and operate its housing projects in an efficient manner so as to enable it to fix the rentals for dwelling accommodations at the lowest possible rates, consistent with providing decent, safe, and sanitary dwelling accommodations."

Unlike the normal situation between landlord and tenant, the statute seems to indicate that the landlord shall provide "decent, safe, and sanitary dwelling accommodations." A reasonable construction of the words "dwelling accommodations" would include the premises adjacent to the housing, which the judge could well have found to be neither safe nor sanitary. The judge could also justifiably have found that the housing authority was negligent in not draining the water off the pond, which was a standing invitation for children of tenants to play, and where because of conditions found by the judge, there was danger to those playing.

In a sense, the housing authorities had violated §26 FF, of c. 121, although there is no penalty attached to the violation. It could be argued that by analogy with the principle that a violation of a statute is evidence of negligence, the failure here to keep the premises in a decent, safe, and sanitary condition, is evidence of negligence, which negligence

contributed to the boy's injury. *Baggs v. Hirschfield,* 293 Mass. 123. *Kralik v. Le-Clair,* 315 Mass. 323, 326. *Mezullo v. Malitz,* 331 Mass. 233, 236.

We find no case where a tenant is suing a housing authority in which the court has discussed the question of a different standard of liability because of the statute under which the housing authority is incorporated. Indeed, in the case of *Wheeler v. Boston Housing Authority,* 341 Mass. 510, the court appears to assume that the liability of the landlord in that case is not different from the liability of the landlord in the usual case.

If the above conclusion is correct, it also disposes of the contention that defendant is liable on the ground of nuisance. A tenant has no right of action against a landlord who maintains a nuisance provided it existed when the tenancy began. "It is not a tort as against the tenant for a landlord to demise to him premises in such a condition that they are a nuisance." *Miles v. Janvrin,* 196 Mass. 431, 437. See also *Pizzano v. Schuman,* 229 Mass. 240, 243. *Garland v. Stetson,* 292 Mass. 95, 103. *Luoma v. Socony-Vacuum Co., Inc.,* 332 Mass. 101, 104.

Disregarding the defendant's requests for rulings other than No. 4, we rule that the trial court was in error in denying that request which was, "As a matter of law, the defendant breached no legal duty owed by it to the plaintiff."

Judgment vacated and finding ordered for defendant.

Paul A. D'Agostino, Jr. of Boston, for the Plaintiff.

George E. Donovan of Boston, for the Defendant.